Number 171258, United States v. Giancarlo Rivera-Morales  Assistant Medal of the Defender, Ellie Maranzini, on behalf of Mr. Rivera-Morales. With the Chief Justice's permission, I'd like to reserve two minutes for rebuttal. There are two issues in this case that warrant reversal. The first and primary issue is whether the officers in this case violated Mr. Rivera's Fourth Amendment rights when they accessed and viewed the contents of his cell phone, given that at the time they could have had no virtual certainty that their search would reveal no more information than what they had already been told by the private party in this case, who was his wife. The second issue is whether the statutory maximum sentence of 30 years imposed in this case was unreasonable. Well, take the first issue. As I understand the district court's, the magistrate judge's, factual findings, the only person who actually accessed the cell phone prior to the defendant's consent to search was the wife. She did it after her first visit to the phone. She did it on the instructions of the government. So that would not be excused under the private party doctrine if she showed the government more than she had accessed the first time on her own. But there's not a scrap of evidence in the record that she showed the government agents anything except what she had viewed in the first place. Your Honor is correct that there's no evidence in the record suggesting that the officers, outside of the presence of Ms. Sanchez at any point, turned on the phone or accessed the phone or that they were at any point shown anything other than the one video, which is at issue in this case. Nevertheless, in light of the Supreme Court's decision in Jacobson and other circuits' decisions interpreting that decision, including the Sixth Circuit's decision in Lichtenberger, and in light of the Supreme Court's holding in Riley, we believe the key issue is not what the officers actually saw during their subsequent searches, which in this case there were three times that the officers were shown the phone and the video on the phone, but rather what they could have seen given the manner in which the search was conducted. That might have some force if the officers themselves had accessed the phone, but they didn't. The phone was turned on and accessed by the private party in every instance. There is one wrinkle in the facts on that issue, Your Honor. At the suppression hearing, Ms. Sanchez testified that she was the one who, during the last meeting with the district attorneys and the agents, that she requested the phone back from the agent and that she turned it on and held it while the video was shown. Yes, that's true. But the federal agent at HSI, Agent Pablo Aguirre, testified that the police officer, Irene Perez, was the one holding the phone while the video was shown. The magistrate judge addressed that in her finding and said it didn't make any difference. Yes. Either way, there's still no evidence that anyone accessed anything except that video. That's correct, Your Honor. There's some technological point you seem to be making. So that the nature of the evidence that was issued in Jacobson is static. Correct. And you're suggesting because this is digital information, when I look at a screen, even though it's going to show just that video, some CNN push notification or something could pop up in the middle. That's the idea? Precisely the point I was getting to, Your Honor. But what's the logic of suggesting that because of that possibility, there is an impermissible search within the media from Jacobson? Because one could handle that problem by just saying, if such a notification pops up and they then saw it, that would be excluded. Why would that make sense? There's a difference. The thing you're looking at can change. It's not just a photograph. Correct. But why does that fact make a difference? I mean, we have to apply Jacobson to this new technology, and I don't quite follow why it makes sense to say that just because the mere possibility that some new thing could arise means that we have to conclude, therefore, that it can't be looked at at all without a warrant. It makes sense because, as the Sixth Circuit in Lichtenberger interpreted, the key to this virtual certainty analysis is, one, how much information does the government stand to gain when it looks, in this case, at the phone? And, two, how certain is it regarding what they will find? But in Lichtenberg also, though, it's static in the sense that all Lichtenberg was focused on was the fact that they actually saw more things. Correct. But you're saying that even when you haven't seen more things, but you might see more things. Precisely. And the reason for that is because in Lichtenberger they emphasized that the second search, in that case, exceeded the scope of the first in large part due to the extensive privacy interest at stake. No, no. They emphasized it exceeded the first because the private party could not say what was accessed the first time. That's a crucial fact in Lichtenberger that's not present here. Well, there were two things that the court emphasized. One, that there was no way to know whether the officer in the second search limited himself only to the same images of child pornography that the private party had, but also that in conducting his search he could have come across any number of private information, such as a bank statement or personal correspondence. But here none of the officers conducted a search. The wife showed them one thing on their instructions. That's chargeable to the government. That doesn't mean that that's not like a government agent having the phone and rummaging through it trying to find the correct image. That's right, Your Honor. But I don't think there's any dispute that when the officers did access either visually or physically the phone that that did constitute a search under the Fourth Amendment. And our emphasis is that because the way it was done, because they had no control over the type of information that they could have come across, as Your Honor suggested, because the— Can I give you just maybe a little help? It's an analogy or a hypothetical. Just tell me if—I've got two photographs, okay? I'm a private party. I've got two photographs, one of which I've seen before. And one of which I haven't looked at before. Okay, I'm holding them. And I hold them up like this to the police. Now, there's a chance I dropped the second one. The police would see both then, even though I only looked at— Would you say that's a problem? I'm not sure. Do you see what I'm saying? And there's many circumstances where I'm imagining where there's a potential for the private party in displaying some information to the police to inadvertently reveal more information than they've seen. But would we say in all of those circumstances that that violates Jacobson, even when all that's actually displayed to the police is the actual thing that they've already seen? I think when it comes to a search of a computer or a phone, yes. And in this case in particular, no measures were taken by the officers to ensure that nothing would be shown other than the video. And we're all familiar with smartphones these days. As Your Honor mentioned, a push notification could pop up. A calendar reminder could pop up. I see my time has run out. May I just conclude this answer? Even just accessing the home screen of a phone reveals a wealth of information about a person. It could be the background photo, an app suggesting a political or religious affiliation. And the officers in this case, the phone hadn't been disconnected from data. They had no control over what the wife or the police officer was going to do with the phone. And so there was no way to ensure and be certain that they would come across no additional information besides the video on that phone. Can I just ask one last question? Is it clear that just holding up a video screen to the police, when the police are going to look at that screen, that that's a search? Yes. What's the best precedent for that? I don't believe that's been, I believe that issue has been assumed both below and at this level, that the second accessing of the video was a search by officers. And the question was mainly about accessing. By accessing, you mean just looking at a screen that someone holds up for you? Correct. Because it's information that is contained within the closed container of the phone that can't be, it's not in plain view. It can't be seen unless the phone is turned on and the specific application accessed. But all that's done not by the police? But it's done at the behest of the police who have had the phone in their custody for over 24 hours at that point. But not the first time, though? No, Your Honor, not the first time. So if they're just looking at the same thing the second time, you wouldn't say that that's excludable? If that's all that could possibly have been seen? I do, I am arguing that it's excludable, not because of the outcome of the search in this case, which we can see. No, I'm saying it's the only data that could possibly have been seen. So if it was a still photo, for example, that had been accessed privately and then the police said, Can we look at it again? Can you hold it up again? You wouldn't say that that is excludable? No, Your Honor, if it was a physical still photo and there was no way that any other information could be revealed. But given the realities of phones and computers. Okay, so potentially they could look further or something could pop up. Exactly. But I'm going to go back to Judge Barron's question. Why is the first thing that was revealed to them by a private party that you say is not excludable in another circumstance, why should that be excludable now? Why should the video be excludable now? Yeah, or whatever the image is, yeah. Because the way the search was done in light of the Supreme Court's decision in Riley and the altered balancing of the privacy interest versus the government interest in this case, the way the search was done did not exclude the possibility that more private information, legal private information, could have been revealed. What if it's a home computer or desktop computer and it's on and there's an image on a screen and then the police actually illegally searched through that computer. Is the screen that they saw in plain view at the beginning also excludable? I think if they're legally present at the time that they plainly viewed the screen, it's not excludable. What's the difference between that and this case? Because the video was not plainly viewed before some government action was taken, which required them to retrieve the phone from the sealed evidence bag, turn it back on or pass it back to the wife to have it turned back on, which she's doing in the context of an interview regarding her husband's alleged crimes. And so that is government. So you're saying they only were able to view it because she was in fact their agent in making it available to be viewed? Correct. And the video in this case is something that would have been within a closed container, I guess, a digital closed container. So just to be clear, if they showed up at her house and she just comes out the front door and says, hey, look at this. Same video. She'd already seen the video. That same video. You'd say that's fine? That would be different, yes. That would be different, Your Honor. And in this case, that's not what happened. There was plenty of time for the person to learn. Let's just follow up on that. So they look at it and a minute later they say, can you show that to us again? You say that's not fine. Arguably not. Because there would be no reason to, without requesting a warrant for the phone, review it again. And in this case, similarly, they had the time. The agent conceded that he intended to. So does your argument depend on us finding that when they showed it to the police the second time she was acting as their agent? Yes. Or that that was the government's actions, yes. Well, those are slightly different. They certainly took action when they asked her to do something. But that's different than necessarily concluding that she was their agent when she did it. I think we would agree with the analysis of the magistrate judge and the law, which did find that that second or third accessing of the phone was at the behest of the government or alternatively with her acting as a government agent. But that wasn't purely private party action the way it was when she was at her home viewing the video. Thank you. Thank you, your honors. Good morning. May it please the court. Juliana Bernandes for the government. The district court properly denied Aguilero's motion to suppress. Now, as argued by the government in the appellate brief, and our first primary argument, which I would like to clarify, was that there was no government search in this case. Because Ms. Sanchez is a private party. Excuse me, excuse me. She's a private party, and so there's no government search when she first sees the video. Yes, sir. But when she comes back to meet with the authorities, and a government agent, police officer, says to her, here's the phone, show these agents the video you showed me. All right? She's acting on the instructions of the government, and she is at that point under Jacobson even, a government agent. She may not frustrate any expectation of privacy, because she already knows what's there. But in showing that, she's acting on the government's instructions. Your Honor, under that scenario, I can understand that argument. She didn't show it the second time of her own volition. She showed it because she was told to show it by the officer. Your Honor, I'm referring to because my viewing of the facts that came out of the suppression hearing was that in every instance, whether it was the desk clerk, whether it was the warning at 8 o'clock to Agent Sanchez, or at the walkout DA's attorney's office where there were agents and prosecutors, that it was always Ms. Sanchez that voluntarily showed the video, that it was not at her behest, and that the government never instigated or asked her to do so. And in fact, the magistrate judge in the opinion in order said that she voluntarily showed it to them by her. So it was the government's first argument in the brief that it was never instigated by the government. They never asked her to do it. At all times, it was a private party showing this. Nevertheless, we note that the magistrate judge did consider, in purposes of their analysis... No, it's not. However, if we were to take the district court's analysis, the magistrate judge's analysis that was then accepted by the district court, and assume that the viewings at the police station and at the Magal district attorney's office were indeed government searches, it falls squarely within the private search doctrine. Because the evidence that we have was that at the Muriel home, Ms. Sanchez accessed the phone, saw a photograph in the video. The next day, the only thing that was shown was that the desk clerk saw the photograph in the video, Agent Bezos saw the video, and then the DA in the recording... We're not dealing with a video cassette tape video. We're just dealing with a mini-computer that can show lots of data whenever you turn it on. And you can't really be sure what you're going to see when you turn it on. That's their basic argument. They're saying, yeah, it's true, there's a video on it. But just inherently, there's lots of other stuff always on that thing when you turn it on. I agree, Your Honor. Well, if you do, doesn't that create a bit of a problem? No, because the magistrate judge discussed and referred to a law review article which says, in this type of analysis, what is determinative is what is actually viewed, not what there was the potential to access. And this court has actually discussed what would happen if a scope, if the search exceeds the scope of the private search. In this court's decision in United States v. Lealea, this court specifically noted that if the search exceeds the scope, that additional information is what becomes invisible. The original information, which in this case would have been the video, would still have been part of the scope. If I have a safe with 1,000 documents in it, I've seen one of them as a private party. Can I tell the police, go ahead and open up the safe, but just look at the one I've seen? Well, Your Honor. What's the answer to that? Well, clearly that would open the possibility that that search could exceed the scope. So they're saying that the phone is like a safe. It's got just thousands, millions and millions and millions of documents in it. The minute you open it up, there's a possibility of seeing more than what I saw. I just can't stop that. If I'd like to just show you the video, what I should do is download that video, go to a separate file, give you the little, I don't know what you'd call it, the thing, and then you would play it, and that'd be it, right? But they didn't do that. They said, here, look at my phone, which they're saying is just like, look at my safe. It's got tons and tons of stuff in it, but I only want you to look at the one thing in it. But considering the jurisprudence cited by the defendants in their brief, the appellants in their brief, and by the government, it's not what is available to access but is what's actually viewed. It's retrospective, not what's prospective. But that would mean in the safe case, if the government could open up the safe, they got lucky and the first document they picked was just the document that she had seen, you'd say no problem. But that's not the case there. And then if they found more, Your Honor, the other 999 documents would be immiscible. That's what United States v. LaMaria says. The only document that would be immiscible was what was within the scope of the original search. Isn't the real answer to Judge Maron's question that the government here was never told to open up the safe? If the private party was told, in the analogy, open up the safe, extract the one document that you've already shown the officers, and show it to me? Your Honor, given the facts of this case, I would alter that a little bit and say it was the private party who accessed the safe, took out the one document, as opposed to having it done at the behest of the government. At all times it was this individual. And I understand the concern that telephones and smartphones are mini-computers, but given the peculiar facts of this case, given the fact that it was Ms. Sanchez that opened the phone, accessed the phone, showed the video, and then turned it off, and the fact that there is no other evidence that there were push notifications, makes this similar to a box with a picture in it, whereby the private party opens the box, shows the picture, and then puts it back in the box. To the extent that we're going to say there is a revenue search, in this case the facts show that it is virtually certain that nothing else was shown beyond the scope. And the circuit has explained that in the situations where something is shown beyond the scope, that the revenue there is excluding that inadmissible evidence, but not taking the evidence that was part of the original search, the video that was shown at the house, the blurry hands photo. Because this case falls squarely within the private search doctrine, if we were to assume indeed that there was a governmental search... What is the... I mean, it doesn't mean you lose, but just out of curiosity, there is that line in Riley, which says that something like, get a warrant, but it's not that hard, so what is the... Would there be some big practical problem in a situation like this where she says, they said I'd like to see the video, and then they say she's going to show the phone. They said, wait a second, do you have a... Thank my God for my new thumb drive. Give me the thumb drive, but if you're going to turn on that computer, I'm going to have to get a warrant first. What would be the problem with that? Even more than what Riley says about our concern about what these things are. What would be the big problem? Riley says that, and I believe even Jacobson says that, that this is not a free pass to rummage through an individual's personal effects, whether it be on a phone or in a bag. But in this case, it's completely different, because there's no rummaging to be had at all. It's the private person, who at a very specific moment knew exactly what to access, and she was the one that did that. Never at the government's behest. All of the agents testified that she vehemently wanted to show it to them, that she called her husband a pig for doing this. Look at what she did. She knew where to go. She did it. There was no rummaging even by her part. Maybe there was rummaging by her part the night before when she was going through his pictures. But at the police station, at the DA's station, she took the phone, opened the video, showed it, turned it off. That issue of a search incident to arrest, to pick up someone's cell phone, to look through their contacts, to look through their text messages, is completely distinguishable in this case. And there, there would be a rummaging through someone's effects, an access of information that's beyond what's needed to ensure officers' safety at a traffic stop. The facts of this case are starkly different. And because of that, they fall within the requirements of the private search doctrine if we were to assume that those views were indeed government searches. Thank you. Ms. Manzini, we asked you questions for an additional six minutes, so is the dollars you're hidden in your two minutes, or are you going to step back? I just have one point that I'd like to make. All right. I tried. Thank you. I just wanted to respond to the government's point that the analysis in this case would be retrospective as opposed to prospective, and I think it's clear that Fourth Amendment jurisprudence is prospective, and the goal of cases like this court's decision in Worry, which then was extended in Riley, is to prevent Fourth Amendment violations by ensuring that the warrant requirement is complied with. And this is the perfect type of case where, by being clear that a warrant is required absent exigent circumstances to further access digital media when there is no way to be sure that no new information will be presented, is completely appropriate and in line with the jurisprudence on this issue. Thank you.